UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

MSP RECOVERY CLAIMS, SERIES LLC, :
a Delaware series limited liability company, :
MSPA CLAIMS 1, LLC, a Florida limited :
liability company, and SERIES PMPI, a :
designated series of MAO-MSO :
RECOVERY II LLC, a Delaware series :
limited liability company, :
                                      :
   Plaintiffs, :
                                      :
v. :
                                      :
THE HANOVER INSURANCE COMPANY :   CASE NO.
and THE HANOVER AMERICAN INSURANCE :
COMPANY :
                                      :
   Defendants. :
                                      :

## NOTICE OF REMOVAL

Defendants The Hanover Insurance Company and The Hanover American Insurance Company (collectively, "Defendants") hereby remove this action from the Circuit Court of the Eleventh Circuit in and for Miami-Dade County, Florida, General Jurisdiction Division, to this Court. This Court has jurisdiction over this action based on (1) diversity jurisdiction; and (2) the Class Action Fairness Act.

**I.    INTRODUCTION**

1. This is a civil action that may be removed to this Court pursuant to 28 U.S.C. §§ 1441 and 1446. This action is within the Court's original jurisdiction pursuant to 28 U.S.C. § 1332(a)(1) because, based on the proposed Second Amended Class Action Complaint (State Dkt. 31), the matter in controversy exceeds the sum of $75,000, exclusive of interests or costs, and there is complete diversity of citizenship. *See infra* Section II. The action is also within the Court's

original jurisdiction because the proposed Second Amended Class Action Complaint purports to bring claims on behalf of a class over 100 entities, there is diversity of citizenship between the putative class and Defendants, and the amount in controversy exceeds $5,000,000. *See infra* Section III.

2.      Pursuant to 28 U.S.C. § 1446(a), copies of all documents filed in the state court action (**Local Case No. 2018-042308-CA-01**) are attached hereto as **Exhibit A**.

## II.    DEFENDANTS HAVE SATISFIED THE REQUIREMENTS FOR REMOVAL UNDER TRADITIONAL DIVERSITY PRINCIPLES

3.      As set forth in further detail below, this notice is timely under 28 U.S.C. § 1446(b)(3) because it is filed within 30 days of Plaintiffs' service of the proposed Second Amended Class Action Complaint ("SAC"), which plainly demonstrates that the amount in controversy exceeds $75,000. *See infra* Section II.C.

4.      Under 28 U.S.C. § 1441(a), venue for purposes of removal is proper in this District because the state court where the action is pending, the Circuit Court of the Eleventh Circuit in and for Miami-Dade County, Florida, General Jurisdiction Division, is within the Southern District of Florida.

5.      Contemporaneously with the filing of this Notice of Removal, Defendants have provided written notice of the removal to Plaintiffs through their counsel of record in the state court matter.

6.      Defendants will promptly file a copy of this Notice of Removal, together with all exhibits, with the Clerk of the Circuit Court of the Eleventh Circuit in and for Miami-Dade County, Florida, General Jurisdiction Division, as required by 28 U.S.C. § 1446(d).

A. **Complete Diversity Exists Between the Parties**

7. The three limited liability company plaintiffs in this case[1] are veritable nesting dolls of interrelated and overlapping entities and individuals. An unincorporated entity, including a limited liability company or limited liability partnership, is a citizen of the states in which its members are citizens. *See, e.g., Rolling Greens MHP, LP v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004) (per curiam) ("[A] limited liability company is a citizen of any state of which a member of the company is a citizen."). Under this standard, determining the citizenship of MSP Recovery Claims, Series LLC, for example, requires establishing the citizenship of four limited liability companies, one limited partnership, one limited liability partnership, four individuals, and two trusts. Ultimately, upon information and belief, the four plaintiff limited liability companies, through their members, are citizens of Texas and Florida. The full membership (and therefore citizenship) of each plaintiff is set forth upon information and belief below (based on Plaintiffs' filings in other cases):

8. Plaintiff **MSP Recovery Claims, Series LLC ("MSPRC")** is a series limited liability company organized under the laws of Delaware with its principal place of business located in Coral Gables, Florida. MSPRC's limited liability company agreement provides for the establishment of one or more designated series. All records of every series entity are maintained together with the assets of MSPRC.

    a. The sole member of MSPRC is VRM MSP Recovery Partners, LLC, a limited liability company organized under the laws of Delaware with its principal place of business located in Houston, Texas.

---

[1] MSP Recovery Claims, Series LLC, MSPA Claims 1, LLC, and Series PMPI, a designated series of MAO-MSO Recovery II LLC have been the named plaintiffs since the outset of the state court action. The SAC, however, seemingly replaces Series PMPI with MSP Recovery Claims Series 44, LLC.

    b. The members of VRM MSP Recovery Partners, LLC are (i) Virage Recovery Master LP, a limited partnership organized under the laws of Delaware with its principal place of business located in Houston, Texas, and (ii) Series MRCS, a designated series of MDA Series LLC, a series limited liability company organized under the laws of Delaware with its principal place of business located in Coral Gables, Florida.

    c. The sole general partner of Virage Recovery Master LP is Virage Recovery, LLC, a limited liability company organized under the laws of Texas with its principal place of business located in Houston, Texas.

    d. The members of Virage Recovery, LLC are two individuals, both of whom are residents and citizens of Texas.

    e. The members of Series MRCS are two individuals, both of whom are residents and citizens of Coral Gables, Florida.

    f. The members of MDA Series LLC are (i) an individual who is a resident and citizen of Florida, and (ii) the JOCRAL Family Limited Liability Limited Partnership, a Florida family limited liability partnership with its principal place of business located in Coral Gables, Florida.

    g. The general partners of JOCRAL Family LLP are two individuals acting in their capacities as trustees of two Florida trusts, both of whom are residents and citizens of Miami, Florida.

9. Plaintiff **MSPA Claims 1, LLC ("MSPA")** is a limited liability company organized under the laws of Florida with its principal place of business located in Coral Gables, Florida.

 a. The sole member of MSPA is MSP Recovery Services, LLC, a limited liability company organized under the laws of Florida with its principal place of business located in Coral Gables, Florida.

 b. The sole member of MSP Recovery, LLC is a Florida family limited partnership, JOCRAL Family Limited Liability Limited Partnership. JOCRAL Family LLP is a Florida family limited liability partnership with its principal place of business located in Coral Gables, Florida.

 c. The general partners of the JOCRAL Family LLP are two individuals acting in their capacity as trustees of two Florida trusts, both of whom are residents and citizens of Miami, Florida.

10. Plaintiff **MSP Recovery Claims Series 44, LLC ("Series 44")** is a series limited liability company organized under the laws of Delaware with its principal place of business located in Coral Gables, Florida. Series 44's limited liability company agreement provides for the establishment of one or more designated series.

 a. The sole member of Series 44 is MSP Recovery Holding Series 01, LLC, a series limited liability company organized under the laws of Delaware with its principal place of business located in Delaware.

 b. The sole member of MSP Recovery Holding Series 01, LLC, is Hazel Holdings I LLC, a limited liability company organized under the laws of Delaware with its principal place of business located in Delaware.

    c. The sole member of Hazel Holdings I LLC, is Hazel Partners Holdings LLC, a limited liability company organized under the laws of Delaware with its principal place of business located in Delaware.

    d. Upon information and belief, none of the members of Hazel Partners Holdings LLC are members of New Hampshire or Massachusetts.

11. Defendant **The Hanover Insurance Company** is a corporation organized under the laws of New Hampshire with its principal place of business located in Massachusetts.

12. Defendant **The Hanover American Insurance Company** is a corporation organized under the laws of New Hampshire with its principal place of business located in Massachusetts.

13. In sum, for purposes of traditional diversity jurisdiction, Plaintiffs are citizens of Texas and Florida, while Defendants are citizens of New Hampshire and Massachusetts. As a result, complete diversity of citizenship exists.

    **B. Plaintiffs' Second Amended Complaint Revealed the Amount in Controversy Exceeds $75,000**

        **i. Plaintiffs' original complaint carefully avoided suggesting that any amount of money was in controversy.**

14. This case began on December 20, 2018, as one of dozens filed by Plaintiffs in the Eleventh Judicial Circuit of Florida against numerous insurance companies and drug or device manufacturers. At first, Plaintiffs in this and the related cases asserted that they were exclusively seeking a "pure bill of discovery," asking the courts to compel defendants to provide information that would purportedly allow Plaintiffs to sue defendants to recover personal injury protection ("PIP") insurance benefits under Florida's statutory Medicaid scheme. *See, e.g.*, Compl., State Dkt. 2 at 25-26; *MSP Recovery Claims, Series LLC v. Philadelphia Indem. Ins. Co.*, No. 19-CV-

20665, 2019 WL 13256834, at *1 (S.D. Fla. July 29, 2019), *aff'd in part, appeal dismissed in part sub nom. MSP Recovery Claims, Series LLC v. Hanover Ins. Co.*, 995 F.3d 1289 (11th Cir. 2021) ("Plaintiffs sued Defendant in Florida state court to obtain a pure bill of discovery. A pure bill of discovery allows a plaintiff to investigate its claims before filing a lawsuit."). In many of these cases, defendants attempted to remove the complaints on the basis of diversity jurisdiction, arguing that Plaintiffs' pure bill claims effectively sought to recover up to $10,000 each under Florida's PIP laws. *See, e.g.*, *MSP Recovery v. Philadelphia Indemnity*, 2019 WL 13256834, at *1-2 (analyzing one case and citing eleven similar decisions in this district).

15.     In virtually every case, courts in this district held that the amount in controversy requirement under 28 U.S.C. § 1332(a) was not satisfied because the complaints sought only information, and "Plaintiffs [did] not allege a specific cause of action, nor a number of potential claims." *MSP Recovery Claims Series, LLC v. Dairyland Ins. Co.*, No. 19-20510-CIV, 2019 WL 1876697, at *1 (S.D. Fla. Apr. 26, 2019), *aff'd sub nom. MSP Recovery Claims, Series LLC v. Hanover Ins. Co.*, 995 F.3d 1289 (11th Cir. 2021). Accordingly, the potential claims and the amount of money at issue under those claims were deemed too speculative. *Id.* at *2.

16.     This case was no exception.  On February 7, 2019, Defendants filed a notice of removal, arguing that the amount in controversy requirement was met, given the total possible amount of accident-related medical payments Plaintiffs sought to recover from Defendants. State Dkt. 12 at 14-15.

17.     The Court disagreed, finding that the "speculative and immeasurable value of the discovery Plaintiffs seek prevents Defendants from demonstrating the threshold amount-in-controversy." *See MSP Recovery Claims, Series, LLC v. Hanover Ins. Co.*, No. 19-20507-CIV, 2019 WL 2105978, at *1 (S.D. Fla. Apr. 22, 2019) ("Defendants cannot establish subject matter

jurisdiction by speculating about the hypothetical amount of damages from a possible, future action."), *aff'd*, 995 F.3d 1289 (11th Cir. 2021). Thus, the court remanded the case to Florida state court. *Id.* at *2.

18. On April 25, 2019, Defendants moved to dismiss the complaint for lack of standing, failure to state a claim, and lack of personal jurisdiction. State Dkt. 14. Plaintiffs did not respond to the motion, which remained pending for over five months.

19. Rather than respond to Defendants' motion to dismiss, Plaintiffs filed a first amended complaint, Amended Complaint for Pure Bill of Discovery ("FAC") on October 8, 2019. State Dkt. 21. The FAC contained a reduced number of categories of documents sought and requested use of a "data matching" process where a third party would receive data from the parties to "confirm whether Defendants are the proper parties to subsequently sue for relief." *Id.* at 15.

20. On November 11, 2019, Defendants filed a second motion to dismiss directed at the FAC, which was based largely on the same grounds as the previous motion to dismiss but contained an additional argument that the FAC sought confidential and protected health information regarding its insureds. State Dkt. 22. Plaintiffs did not respond to the motion, which remains pending after three and a half years.

    ii. **<u>The proposed SAC makes clear that the amount in controversy exceeds $75,000.</u>**

21. Rather than respond to Defendants' motion to dismiss, Plaintiffs have now sought leave to file a second amended complaint, Second Amended Class Action Complaint ("SAC") on May 24, 2023. State Dkt. 31. The SAC fundamentally alters the nature of the case. Although the SAC still seeks a pure bill of discovery, it adds a request for declaratory judgment relating to Defendants' alleged obligations under the Florida Medicaid laws, introducing for the first time a request for affirmative relief. *See Doe v. Fla. Int'l Univ. Bd. of Trustees*, 464 F. Supp. 2d 1259,

1261 (S.D. Fla. 2006) (noting that the clock on removal will reset "where an amended complaint fundamentally alters the nature of the case to such an extent that it creates an essentially new lawsuit." (internal quotation marks omitted)).

22.     While styled as a request for declaratory judgment, the SAC seeks a judgment that Defendants had an obligation to pay PIP benefits to Medicaid recipients based on Florida's Medicaid rules.  Specifically, they request a judgment stating that, where Defendants have determined that their insureds are Members covered by Secondary payors, Defendants "must coordinate benefits with Secondary Payors" and "must alert Secondary Payors of their primary obligations pursuant to Fla. Stat. § 627.736(4)."  SAC ¶ 81.

23.     In Florida, owners and registrants of motor vehicles must carry certain minimum insurance. Fla. Stat. § 627.733(1)(a).  That includes a requirement for coverage for at least $10,000 in expenses associated with bodily injury suffered while operating a motor vehicle. Fla. Stat. § 627736(1).  This is often referred to as Florida's "personal injury protection" or "PIP" law. Florida Statutes § 627.736(4) is a provision of Florida's PIP law titled "Payment of benefits."  It explains that PIP insurers are "primary," meaning that if an insured is covered by their policy, they must generally pay first (after having been given appropriate notice) before other potential sources of coverage such as private insurance, Medicare, or Medicaid are required to pay.  *Id.*  The provision also explains the process by which insurers must reimburse the Florida Medicaid program when their insured is a Medicaid beneficiary whose medical care is initially paid for under that program.  Fla. Stat. § 627.736(4).

24.     Plaintiffs seek a declaration that Defendants have an obligation to "coordinate benefits with Secondary Payors" such that Secondary Payors do not "pay[] for accident-related medical items and services for which . . . Defendants have a primary obligation." SAC ¶¶ 81, 79.

Under the terms of their complaint, they effectively ask the court to determine Defendants' obligations to pay under the conditions that they posit. The term "coordination of benefits" is generally understood to refer to the process by which a potential payer's obligation to pay is determined. For example, the Centers for Medicare and Medicaid Services explains that the coordination of benefits process is intended to "ensur[e] that the primary payer, whether Medicare or other insurance, *pays first*." *Coordination of Benefits*, Ctrs. for Medicare & Medicaid Servs. (Feb. 15, 2023), *available at* https://www.cms.gov/medicare/coordination-of-benefits-and-recovery/coordination-of-benefits-and-recovery-overview/coordination-of-benefits/coordination-of-benefits (emphasis added).

25.  Although Defendants dispute any liability and Plaintiffs' entitlement to any damages, the face of the SAC demonstrates that Plaintiffs are seeking more than $75,000. Specifically, Plaintiffs pled that they have sent "over **100** reimbursement demands" and filed "**16** Civil Remedy Notices," SAC ¶ 47 (emphasis in original), demanding that Defendants reimburse Plaintiffs for "conditional payments" Plaintiffs made as Medicare or Medicaid payers, plus double damages and interest. An example of one such demand and CRN are attached hereto as **Exhibit B** in redacted form. The total amount demanded from Defendants exceeds $75,000.

26.  Consequently, the SAC alleges a civil action between citizens of diverse states, and the amount in controversy exceeds the sum of $75,000, exclusive of interest and costs. Jurisdiction therefore exists pursuant to 28 U.S.C. § 1332(a), and removal is therefore proper under 28 U.S.C. § 1441(a).

C.  **Removal Is Timely**

27.  Where "the case stated by the initial pleading is not removable, a notice of removal may be filed within 30 days after receipt by the defendant, through service or otherwise, of a copy

of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable." 28 U.S.C. § 1446(b)(3).  Here, the proposed SAC is "other paper" for purposes of establishing the amount in controversy.  *See* 28 U.S.C. § 1446(c)(3)(A) ("If the case stated by the initial pleading is not removable solely because the amount in controversy does not exceed the amount specified in section 1332(a), information relating to the amount in controversy in the record of the State proceeding, or in responses to discovery, shall be treated as an "other paper" under subsection (b)(3).").

28. Defendants' agent for service of process first received Plaintiffs' proposed SAC on May 21, 2023.  Accordingly, removal is timely now as fewer than 30 days have elapsed since that date.

29. With regard to the one-year limitation on removal, under 28 U.S.C. § 1446(b)(1), a complaint may be removed from state court more than one year after it is filed provided that the "district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action." Where "the district court finds that the plaintiff deliberately failed to disclose the actual amount in controversy to prevent removal, that finding shall be deemed bad faith under paragraph (1)." 28 U.S.C. § 1446(b)(3)(B).

30. Here, there is ample basis from which the Court can infer that Plaintiffs deliberately obscured the true amount in controversy in order to avoid removal.  This is one of dozens of cases that Plaintiffs brought in Florida state court in 2019.  In many companion cases, other insurer defendants attempted to remove the complaints against them to federal court with little success, including in this case.  Nevertheless, courts in this district expressed suspicion at Plaintiffs' tactics.  Accordingly, these companion cases were remanded with "a warning." *MSP Recovery Claims, Series LLC v. Bos. Sci. Corp.*, No. 18-CV-24546-UU, 2019 WL 180125, at *2 (S.D. Fla. Jan. 9,

2019). As one judge advised, courts in this district were "well aware" of the numerous complaints "with which Plaintiffs have clogged this district." *Id.* Accordingly, Plaintiffs were warned that "if *any future defendant* is able to show that Plaintiffs eventually amend their bills of pure discovery" in a way that would confer federal jurisdiction, courts would "deny remand" and "seriously consider whether Plaintiffs' representations in this case amount to a breach of their duty of candor and whether sanctions are appropriate." *Id.*

31. In the face of that warning, Plaintiffs now seek to amend and allege they have more than 100 viable claims for payment and makes clear that those claims stem from assignments that they possessed at the time they filed the original complaint. SAC Appendix A (describing the dates on which they entered into the assignments with various parties). In other words, Plaintiffs now allege that they already had a legal right to pursue numerous claims against Defendants when they filed this action. Moreover, the representative demand letter and CRN attached hereto show that the claims date from prior to the filing of this action.

32. Plaintiffs had every incentive to plead the full extent of their assignments and claims earlier—however they chose not to do so to avoid removal. In light of Plaintiffs' litigation history in this and related cases, the Court can infer that their decision to exclude additional claims was a calculated one to avoid exceeding the amount in controversy and triggering federal jurisdiction.

33. Plaintiffs offer no explanation for the years'-long delay in presenting information about the true scope of their claims. "Bad faith can generally be inferred from amendment outside of the statutory bar where the plaintiff has provided no justification for the delay." *Hill v. Allianz Life Ins. Co. of N. Am.*, 51 F. Supp. 3d 1277, 1282 (M.D. Fla. 2014), *aff'd*, *Hill v. Allianz Life Ins. Co. of N. Am.*, 693 F. App'x 855 (11th Cir. 2017) (internal quotation marks omitted); *see also,*

*e.g.*, *Schwartzben v. Nat'l Fire & Marine Ins. Co.*, No. 22-cv-20755, 2022 WL 4102799, at *5 (S.D. Fla. Sept. 8, 2022) (finding bad faith where "[t]he delay in removal [was] a direct result of Plaintiff's gamesmanship.")  Because Plaintiffs owned the vast majority of these newly asserted claims even before they filed their *original* complaint, this Court may infer from their lack of explanation that they declined to plead additional claims to avoid revealing that the amount of controversy was satisfied.

34. In sum, Plaintiffs carefully crafted their original complaint and FAC to avoid federal jurisdiction, as judges in this district have recognized. They then waited years to disclose the full extent of their claims. Accordingly, removal is proper because Plaintiffs have acted in bad faith within the meaning of 28 U.S.C. § 1446.

### III. DEFENDANTS HAVE ALSO SATISFIED THE REQUIREMENTS FOR REMOVAL UNDER THE CLASS ACTION FAIRNESS ACT

35. Plaintiffs' SAC may provide an independent basis for federal jurisdiction under the Class Action Fairness Act ("CAFA"). *See* 28 U.S.C. § 1332(d).  Under CAFA, federal jurisdiction over any class action suit where (1) the parties are minimally diverse, meaning at least one plaintiff is a citizen of a different state than at least one defendant; (2) the putative class includes at least 100 members; and (3) the amount of controversy is at least $5,000,000.  *Id.*  The one-year limitation on removal in the absence of bad faith does not apply to suits removed under CAFA. *See* 28 U.S.C. § 1446(b).

36. This removal notice is timely because it was filed less than 30 days after Defendants first received the proposed SAC on May 21, 2023.[2] All other procedural requirements for removal under CAFA are also met, as set forth below.

A. **Diversity of Citizenship Exists under CAFA**

37. Limited liability companies are treated differently for purposes of CAFA jurisdiction than for ordinary diversity jurisdiction. Under CAFA, "an unincorporated association shall be deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is organized." 28 U.S.C. § 1332(d)(10). The Eleventh Circuit has held that the

---

[2] Defendants acknowledge that some courts in this district have held that a state court action is not removable on the basis of an amended complaint until the state court grants the plaintiff's motion to amend. *See, e.g.*, *Miami Beach Cosm. & Plastic Surgery Ctr., Inc. v. UnitedHealthcare Ins. Co.*, No. 1:15-cv-24041, 2016 WL 8607846, at *3 (S.D. Fla. Jan. 8, 2016) ("In the usual case, regardless of whether removal is based on federal question or diversity jurisdiction, a proposed amended complaint will not suffice to furnish a basis for removal jurisdiction."). The Eleventh Circuit in a non-precedential opinion similarly suggested that the critical procedural event when assessing whether removal of an amended complaint was timely is the state court's decision granting the motion to amend, rather than the filing of the motion. *See Bollinger v. State Farm Mut. Auto Ins. Co.*, 538 Fed App'x 857, 863 (11th Cir. 2013).

However, Courts outside this district have held that the filing of motion to amend may trigger the 30-day removal clock. *See, e.g.*, *Morrison v. Nat'l Ben. Life Ins. Co.*, 889 F. Supp. 945, 947 (S.D. Miss. 1995) (removal was proper based on proposed amendment that increased the damage demand, meeting the amount-in-controversy requirement, because the motion to amend was "other paper" under § 1446); *Neal v. Trugreen Ltd. P'ship*, 886 F. Supp. 527, 528 (D. Md. 1995) (removal was untimely where defendant waited for plaintiff to file an amended complaint stating a federal claim, but had received notice via an earlier motion that plaintiff intended to file a Title VII claim as soon as she received a right to sue letter—i.e., suggesting the defendant should have removed as soon as it received the motion signaling a Title VII claim); *F.W. Myers & Co. v. World Projects Int'l, Inc.*, No. 96-CV-0763, 1996 WL 550135, at *3 (N.D.N.Y. Sept. 19, 1996) (holding that the motion to amend was "other paper" that demonstrated removability); *Harriman v. Liberian Mar. Corp.*, 204 F. Supp. 205, 206–07 (D. Mass. 1962) ("Congress did not condition the running of the twenty day period upon receipt by defendant of knowledge that a motion had been allowed but, rather, on the receipt by defendant of a document which would bring home to that defendant the fact that plaintiff had changed his claim and increased it to a sum in excess of the jurisdictional amount."). Defendants anticipate that Plaintiffs would argue removal was untimely if Defendants waited until the state court ruled on the motion to amend. As a result, Defendants offer this basis for removal out of an abundance of caution to avoid any possible waiver.

"general rule[s] for unincorporated entities also appl[y] to limited liability companies." *Rolling Greens MHP, L.P.*, 374 F.3d at 1022. Accordingly, unlike traditional diversity jurisdiction, "for the CAFA's jurisdictional purposes, an [LLC] is a citizen of the state in which it is organized and the state of its principal place of business." *See Alvarez v. Loancare LLC*, No. 20-21837-CIV, 2021 WL 184547, at *7 (S.D. Fla. Jan. 19, 2021).

38. As set forth below, upon information and belief, all Plaintiffs are citizens of Delaware and Florida:

39. Plaintiff **MSP Recovery Claims, Series LLC ("MSPRC")** is a series limited liability company organized under the laws of Delaware with its principal place of business located in Coral Gables, Florida.

40. Plaintiff **MSPA Claims 1, LLC ("MSPA")** is a limited liability company organized under the laws of Florida with its principal place of business located in Coral Gables, Florida.

41. Plaintiff **MSP Recovery Claims Series 44, LLC ("Series 44")** is a series limited liability company organized under the laws of Delaware with its principal place of business located in Coral Gables, Florida.

42. As set forth below, Defendants are citizens of New Hampshire or Massachusetts:

43. Defendant **The Hanover Insurance Company** is a corporation organized under the laws of New Hampshire with its principal place of business located in Massachusetts.

44. Defendant **The Hanover American Insurance Company** is a corporation organized under the laws of New Hampshire with its principal place of business located in Massachusetts.

45. In sum, under CAFA, Plaintiffs are citizens of Delaware and Florida, while Defendants are citizens of New Hampshire and Massachusetts. Therefore, diversity of citizenship exists between the parties.

### B. CAFA's Amount in Controversy Requirement is Met

46. The SAC seeks a declaration requiring Defendants to "determine whether their insureds are also Members covered by Secondary Payors, and if so, then, the Defendants *must coordinate benefits* with Secondary Payors." SAC ¶ 81(a) (emphasis added). As explained above, a declaration that Defendants must "coordinate benefits" as primary payers would amount to a declaration that Defendants must proactively identify insureds who meet criteria Plaintiffs specify and reimburse Plaintiffs and all Class Members under the conditions they articulate.[3]

47. Here, Plaintiffs explicitly allege that they have sought reimbursement for at least 100 claims under Florida's PIP law on their own behalf, i.e., not including the claims of other putative class members. SAC ¶ 47. Given that each insured under that law must obtain a policy with at least $10,000 in coverage, the Plaintiffs' allegations alone demonstrate the total amount in controversy may exceed $1,000,000, without considering the potential value of absent putative class members' claims.

48. Considering the potential claims brought on behalf of absent class members, the total amount in controversy only balloons further. There are over 100 members of Plaintiffs' proposed class. Accordingly, assuming that the class members are similarly situated to Plaintiffs then, at least $5,000,000 is at issue in this case.

---

[3] Plaintiffs' understanding of Florida's PIP law is flawed, and Defendants do not have a genuine obligation to pay under the circumstances they describe. Nevertheless, "the pertinent question at the jurisdictional stage is what is in controversy in the case, not how much the plaintiffs are ultimately likely to recover." *S. Fla. Wellness, Inc.*, 745 F.3d at 1318 (11th Cir. 2014).

  **C. The Numerosity Requirement under CAFA Is Met**

49. As noted above, CAFA applies where the class action involves a class of 100 or more plaintiffs. 28 U.S.C. § 1332(d)(5)(B). Here, Plaintiffs seek to bring claims on behalf of the following class: "All non-governmental organizations and their assignees (collectively 'Secondary Payors'), that provide health and prescription benefits in the State of Florida to Members who are also insured by the Hanover Defendants under a No-Fault, PIP, or Med Pay insurance policies." SAC ¶ 53. Plaintiffs clarify that "Secondary Payors" refers to "all non-governmental organizations, including but not limited to Medicaid Managed Care Organizations, Medicare Advantage Organizations, first-tier and downstream entities, and their assignees, that provide health and prescription benefits in the State of Florida." *Id.* at ¶ 1 n.1.

50. Even considering only Medicare Advantage Organizations ("MAOs") and Medicaid Managed Care Organizations ("MCOs"), the putative class easily exceeds 100 members. The Centers for Medicare and Medicaid Services maintains a directory of all MAOs. *See MA Plan Directory*, Ctrs. Medicare & Medicaid Servs. (May 2023), *available* at https://www.cms.gov/research-statistics-data-and-systems/statistics-trends-and-reports/mcradvpartdenroldata/ma-plan-directory. The directory lists 968 MAO plans that offer services to Medicare beneficiaries. Of those, 86 plans list a primary directory address in Florida. *Id.* Many additional MAOs offer plans to Florida residents despite having primary directory addresses in other states. *See, e.g.*, *id.* (listing an entry for "Humana Health Insurance Company of Florida, Inc. with a directory address in Kentucky). Additionally, at least 16 MCOs offered services to Medicaid beneficiaries in Florida. *See State Health Facts: Total Medicaid MCOs*, Kaiser Fam. Found. (2022), *available at* https://www.kff.org/medicaid/state-indicator/total-

medicaid-mcos. As a result, even without considering "first-tier and downstream entities," the Plaintiffs' proposed class would encompass more than 100 members.

WHEREFORE, without waiving any of its potential defenses or counterclaims, Defendants respectfully remove this action from the Circuit Court of the Eleventh Circuit in and for Miami-Dade County, Florida, General Jurisdiction Division, to this Court pursuant to 28 U.S.C. §§ 1332, 1441, and 1446.

Dated: June 20, 2023.                    Respectfully submitted,

**COFFEY BURLINGTON, P.L.**

2601 South Bayshore Drive, Penthouse One
Miami, Florida  33133
Telephone: (305) 858-2900
Facsimile:  (305) 858-5261

By:   */s/ Scott A. Hiaasen*
       Kendall B. Coffey, Esq.
       Florida Bar No. 259861
       kcoffey@coffeyburlington.com
       Scott A. Hiaasen, Esq.
       Florida Bar No. 103318
       shiaasen@coffeyburlington.com
       lperez@coffeyburlington.com
       service@coffeyburlington.com

       *Counsel for Defendants The Hanover Insurance Company and The Hanover American Insurance Company*

## **CERTIFICATE OF SERVICE**

This is to certify that on June 20, 2023, a copy of the Notice of Removal with supporting exhibits was sent via electronic mail and mail to:

Alexis Fernandez, Esq.
John H. Ruiz, Esq.
MSP Recovery Law Firm
2701 S. Lejeune Road, 10th Floor
Coral Gables, FL 33134
afernandez@msprecoverylawfirm.com
jruiz@msprecoverylawfirm.com
serve@msprecoverylawfirm.com


Alfred Armas
Armas Bertran Zincone
4960 SW 72nd Ave., Ste. 206
Miami, FL 33155
alfred@armaslaw.com